Sidney C. BROOKS., M.D.,

and

Sidney C. Brooks, M.D., P.C.,
Plaintiffs–Appellants,

v.

The ARLINGTON HOSPITAL ASSOCIATION, Defendant–Appellee.

No. 87–2571.

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1988.

Decided June 30, 1988.

Thomas A. Mauro (Sarah J. Landise, Arlington, Va., Mauro & Landise on brief), for plaintiffs-appellants.

Gerald R. Walsh (Linda Babertzian, Crews & Hancock on brief), Richmond, Va., for defendant-appellee.

Before WINTER, Chief Circuit Judge; CHAPMAN, Circuit Judge, and McMILLAN, District Judge for the Western District of North Carolina, sitting by designation.

McMILLAN, District Judge:

Plaintiffs Sidney C. Brooks., M.D., and Sidney Brooks, M.D., P.C., filed this action on October 14, 1986, against defendant The Arlington Hospital Association. The case arises from the termination on December 8, 1980, of Brooks' staff privileges as a member of the psychiatry department at Arlington Hospital. Defendant owns and operates the hospital.

The hospital's board of trustees voted on December 8, 1980 not to renew Brooks' medical staff appointment because Brooks failed to complete a "delineation of privileges" form required for the hospital's medical staff credentials files.

Dr. Brooks alleges that the hospital breached his employment contract by failing to follow the termination procedures set out in the hospital's bylaws. Dr. Brooks also asserts claims that hospital employees violated his right to due process, interfered with his right to conduct his profession, and induced him to violate various federal and state laws.

The district court allowed defendant's motion for summary judgment and dismissed the action. For the reasons stated below, we affirm.

I

Sidney Brooks was member of the Arlington Hospital psychiatry department from 1975–80. He served as the chairperson of the department until 1978, and as medical director until 1979.

On December 1, 1979, Dr. Thomas McWilliams, President of the Medical Staff

at the hospital, and John P. Sverha, Hospital Administrator, sent a letter to all members of the medical staff. The letter advised the addressees that the hospital's method for review and reappointment of staff did not meet the criteria formulated by the Joint Committee on Accreditation of Hospitals ("JCAH"). The letter also stated that in March, 1980, and every December thereafter,

"... reappointment will be on an individual basis and will be contingent upon each physician's conformance with the requirements outlined below."

The outlined requirements included a provision that each staff member's credentials file must contain a "delineation of hospital privileges" form. In addition, the letter stated that all requirements would be strictly enforced. Joint Appendix at 70.

On August 22, 1980, Dr. Lawrence Ballon, the chairperson of the psychiatry department, sent a delineation of privileges form and an accompanying memo to all members of the psychiatry department staff. The memo explained that the hospital expected a visit from the JCAH in the fall, and that the delineation of privileges form "must be in your file by that time." *See*, Joint Appendix at 77–79.

On September 29, 1980, Dr. Brooks sent a letter to Dr. McWilliams, chief of the medical staff, stating various objections to the form. Dr. McWilliams wrote Dr. Brooks in response on October 31, 1980, notifying Brooks that McWilliams had forwarded a copy of Brooks' letter to Dr. Ballon, the psychiatry department chairperson. Dr. McWilliams stated his belief that Brooks' objections were more appropriately addressed to the psychiatry department. Joint Appendix at 88.

Dr. Ballon wrote Dr. Brooks on November 17, 1980. The text of that communication follows:

"Dr. McWilliams forwarded to me your correspondence of September 29, 1980, concerning your objections to the mechanism for delineation of privileges in the Department.

Since this is a departmental matter, I am writing to invite you to attend the departmental meeting on Monday, December 1, 1980, so that your concerns can be addressed and dealt with by the medical staff. The procedure in question has been completed by every other member of the medical staff without complaint or objection, and received formal Executive Committee approval on October 27, 1980. Nevertheless, I am more than willing to revise the procedure if this is the desire of the members of the medical staff. However, I feel compelled to point out that delineation of privileges is a requirement, and not an option. *Your failure to complete the process either in its present form or in a form which may be revised according to the wishes of the medical staff would be viewed as a grave matter and may adversely affect your reappointment to the medical staff for the coming year.*"

Joint Appendix at 95 (emphasis added).

Dr. Brooks did not appear at the December 1 meeting, nor did he submit the required form.

On December 12, 1980, Mr. Sverha, the hospital administrator, wrote Dr. Brooks to inform him that his staff privileges had been terminated:

"This is to let you know that because of your failure to comply with certain portions of the credentialling process, the Department of Psychiatry and the Executive Committee of the Medical Staff voted to recommend to the Board of Trustees that your appointment to the Medical Staff not be renewed for 1981. Accordingly, the Board of Trustees at their meeting of December 8, 1980 voted to approve that recommendation and you were not reappointed.

If you do not agree with the decision of the Department, you have the right to appeal in accordance with Article III, Section 7, Subsection 1, of the Medical Staff Bylaws.

Your past association with this facility is appreciated."

Joint Appendix at 107.

Brooks and his counsel subsequently requested an appeal.

Article III, Section 7 of the hospital's bylaws specified the procedures and criteria governing nonrenewal of medical staff appointments and termination of hospital privileges. The bylaws provided for an initial hearing before a staff hearing committee, subsequent appeal to a joint conference committee, and ultimate appeal to the Board of Trustees. Joint Appendix at 122–126.

On February 20, 1981, Dr. McWilliams, the chief of the medical staff, notified Dr. Brooks by letter that a staff hearing committee had been appointed and that his appeal would be heard on March 25, 1981. Joint Appendix at 189.

On February 27, 1981, Brooks filed a suit in the Virginia state court (Joint Appendix at 465) seeking a temporary restraining order and an injunction ordering reinstatement of his privileges. On March 6, 1981, Brooks' motion for temporary restraining order was denied. Brooks took no further action against the hospital in the state proceeding; it was dismissed on December 31, 1986, because it had been inactive for more than five years.

On March 18, 1981, counsel for the hospital advised Dr. Brooks' counsel that the hospital intended to present additional allegations of misconduct against Dr. Brooks at the March 25 hearing. Counsel also discussed the possibility of settlement and postponement. On March 24, 1981, the hospital postponed the hearing.

On April 29, 1981, counsel for the hospital sent Dr. Brooks' counsel a letter detailing additional allegations, and requesting Dr. Brooks' counsel to call him on receipt of the letter to reschedule the hearing. Neither Dr. Brooks nor his counsel contacted counsel for the hospital to reschedule the hearing. Joint Appendix at 177–179.

On April 1, 1982, almost a year later, Dr. Brooks filed a second lawsuit against the hospital, this time in the United States District Court for the Eastern District of Virginia. Brooks alleged that the termination of his employment was a violation of the United States Constitution. The action was dismissed for lack of subject matter jurisdiction on April 30, 1982.

On October 19, 1982, Brooks filed a third suit against the hospital, again in U.S. District Court. This was a diversity suit challenging the termination as a breach of contract. On March 9, 1983, the district court allowed the hospital's motion for summary judgment, and dismissed the action. The district court found that the hospital had complied with its bylaws and that plaintiffs' failure to complete the appeals process was an unexcused failure to exhaust available contractual remedies. The court dismissed the action without prejudice to a later suit if, after completion of the appeals process, a viable claim remained.

After the dismissal of the third action, Brooks requested a staff committee hearing. The hearing was held on July 7, 1983. The staff committee upheld the decision not to renew Brooks' appointment.

Dr. Brooks appealed the staff hearing committee's decision to the joint conference committee. That committee heard the matter on March 12, 1983, and on that same evening decided to affirm the staff hearing committee's decision.

On March 31, 1984, Dr. Brooks' counsel received a copy of the joint conference committee's decision. The bylaws allow fifteen days from the date of decision for appeal of a joint conference committee decision. Dr. Brooks' counsel did not request an appeal of the joint conference committee's decision until May 8, 1984, thirty-eight days after he received the decision.

The Board of Trustees refused to hear the appeal on the ground that it was not requested within the fifteen-day period. The Board approved the joint conference committee's decision on July 30, 1983, thereby ending the appeal process.

On December 31, 1985, Dr. Brooks filed his fourth suit against the hospital in the U.S. District Court. That action was dismissed on April 11, 1986, due to Brooks' failure to comply with discovery orders.

On October 14, 1986, Brooks filed this suit. The court dismissed the professional corporation plaintiff on February 9, 1987. On March 20, 1987, the court allowed defendant's motion for summary judgment

and dismissed the action; on April 17, 1987, it denied plaintiffs' motion for reconsideration.

## II

In dismissing plaintiffs' breach of contract claim, the district court treated Brooks' third suit as *res judicata* with respect to events occurring prior to that time. Plaintiffs rely on language in the court's March 9, 1983, memorandum opinion which indicates that the court found plaintiff had failed to exhaust his remedies under the contract. Plaintiffs argue that the dismissal of the third suit was jurisdictional, and that the third suit has no preclusive effect on the current suit.

Brooks' third suit, like the present suit, raised a breach of contract claim between the same parties as to events occurring prior to March 9, 1983. Dr. Brooks asserted in the third suit that the hospital failed to schedule a hearing on Brooks' appeal as required by Article III, Section 7, Subsections 1 and 3 of the hospital's bylaws. The court found that the hospital had not failed to schedule the hearing:

> "The invitation to plaintiff's counsel to contact the hospital to arrange a rescheduling of the hearing was a courtesy of which plaintiff never availed himself. The hospital was amply justified in the absence of such a contact, in assuming that the plaintiff desired to litigate rather than to pursue the remedy it had afforded—and is still willing to afford."

Joint Appendix at 555.

Dr. Brooks now asserts for the first time that the hospital failed to follow its bylaws by failing to provide him with notice and an opportunity to be heard *prior* to termination of his privileges. This claim arises out of the same events that were before the court in Brooks' third lawsuit.

■ The doctrine of *res judicata* "precludes the assertion of a claim when a judgment on the merits [in a prior suit] bars further claims by parties or their privies based on the same cause of action [citations omitted]." *Harnett v. Billman,* 800 F.2d 1308, 1312 (4th Cir.1986), *cert. denied,*

— U.S. ——, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987). A federal court should apply the federal doctrine of *res judicata* unless the application of *res judicata* touches an important question of state law, such as privity. *Harnett,* 800 F.2d at 1313. We apply federal *res judicata* rules in this case because the parties were identical in both suits and because the only question raised here is the scope and effect of a prior judgment by a United States District Court. *See, Harnett,* 800 F.2d at 1312–13.

The fact that Dr. Brooks raises in the current suit allegations of bylaws violations not raised in his third suit does not destroy the preclusive effect of the judgment in the third suit. *Harnett,* 800 F.2d at 1313. *Res judicata* will bar Dr. Brooks' current breach of contract claim as to events prior to March, 1983, unless the order dismissing the third suit was not a judgment on the merits.

■ The March 9, 1983, order could be interpreted as a judgment on the merits of the question whether the hospital followed its bylaws prior to that time. The court had squarely before it that precise question. The court made findings of fact concerning transactions between the parties, and applied the hospital's bylaws to those facts. The court concluded as follows:

> "The plaintiff, relying on the by-laws as the contract supporting his cause of action, must take the bad with the good. That 'contract' prescribes the avenue for his redress. It is the hospital's failure to follow its prescribed route down that avenue that is the asserted breach. *But it is clear from this record that the hospital did follow it.*"

Joint Appendix at 554–5 (emphasis added).

Dr. Brooks' allegations in the current suit include no new facts. Rather, these allegations involve further interpretation and application of the bylaws to the same set of events at issue in the third suit. *"Res judicata* prevents litigation of all grounds for, or defenses to, recovery that were *previously available* to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen,* 442 U.S. 127, 131, 99

S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979) (emphasis added).

Plaintiffs argue on appeal that the March 9, 1983, dismissal was merely jurisdictional and should not operate as a bar to the breach of contract claim in the current suit.

The March 9, 1983, order allowed the hospital's motion for summary judgment. The ground of that motion was that plaintiff had failed to exhaust his administrative remedies available under the bylaws. Plaintiff opposed the motion on the ground that the hospital had failed to reschedule a hearing before the staff hearing committee, thereby violating the bylaws.

The court, after finding that the hospital had not violated the bylaws, held unexcused plaintiff's failure to exhaust his administrative remedies. The court granted summary judgment and dismissed the case "without prejudice to the plaintiff if, after exhaustion of his administrative remedies, a viable claim remains." Joint Appendix at 556.

It is well-established law that a dismissal for lack of jurisdiction does not bar a subsequent suit on the same claim brought in a court of competent jurisdiction. *See, McLaughlin v. Alban,* 775 F.2d 389 (D.C. Cir.1985); *Bunker–Ramo Corporation v. United Business Forms, Inc.,* 713 F.2d 1272 (7th Cir.1983); *Nilsen v. City of Moss Point, Miss.,* 701 F.2d 556 (5th Cir.1983); *Segal v. American Telephone and Telegraph Co., Inc.,* 606 F.2d 842 (9th Cir. 1979). However, where a court decides a legal issue as a precondition to determining its jurisdiction, the resulting judgment precludes relitigation of that issue under the doctrine of direct or collateral estoppel, also known as issue preclusion. *Restatement of Judgments, 2d,* § 20, comment b., and § 27, comment n. (1982).

The court in the third suit examined the hospital's adherence to the procedures outlined in the bylaws in order to determine whether the exhaustion doctrine should apply. A significant procedural breach, such as a failure of required pre-termination notice or hearing, could have obviated the exhaustion requirement. Requiring exhaustion of further procedures by plaintiff when the defendant had already failed to provide required procedural protection is an exercise in futility, a situation presenting a recognized exception to the exhaustion doctrine.

Relitigation of an issue of fact or law will be precluded when the party seeking relitigation had a full and fair opportunity to litigate the issue in the prior action, the issue was actually litigated, and it was necessary to the prior judgment. *Fullerton Aircraft Sales v. Beech Aircraft Corporation,* 842 F.2d 717, 720 (4th Cir.1988); *U.S. v. Wight,* 819 F.2d 485, 487 (4th Cir. 1987).

Dr. Brooks had a full and fair opportunity in the third suit to litigate the question whether the hospital violated its bylaws prior to March 9, 1983. The district court's conclusion of law that no procedural violation had occurred was necessary to its determination that plaintiff's failure to exhaust his contractual remedies was unexcused. We therefore conclude that the summary judgment of dismissal in the third suit directly estops relitigation in the current suit of the issue whether events prior to March 9, 1983 give rise to a breach of contract claim. *See, Restatement of Judgments, 2d,* § 27. The court below did not err in refusing to reexamine the hospital's behavior prior to March 9, 1983 in light of Dr. Brooks' pretermination notice and hearing arguments.

■ Even if we were to hold otherwise, we would affirm the judgment on the ground that events prior to March 9, 1983, show no failure by the hospital to follow its bylaws.

Dr. Brooks argues that the bylaws gave him a right to notice and a hearing prior to initial suspension or termination of his hospital privileges. The hospital asserts that the bylaws contemplate continuing privileges pending a hearing only where the change in a physician's status is initiated by a complaint about the physician's conduct.

Article III, Subsection 7 of the hospital bylaws is titled "Non Renewal or Limita-

tion of Privileges and Rights of Appeal." Subsection 1 provides as follows:

"... in any case wherein the Medical Staff and/or the Board of Trustees do not recommend appointment or reappointment, or recommend reduction in privileges, the member involved shall have a right to a hearing before a Hearing Committee, and the right to appeal in a manner hereafter provided, as in the case of complaints (Subsection 3 below)."

Subsection 1 specifies two rights "in any case wherein the Medical Staff ... do not recommend reappointment." The affected physician has a right to a hearing before a Hearing Committee, and the right to appeal. Subsection 1 is silent as to whether these hearings must be provided before or after termination.

Dr. Brooks points to two other provisions of the bylaws which he contends confer the pre-termination notice and hearing rights.

Subsection 5 provides as follows:

"The purpose of the foregoing procedures is to afford a member whose privileges may be changed, a full and fair opportunity to be heard after due notice by impartial disinterested panels. In this way, the interests of members of the Medical Staff will be protected, and the interests of the hospital, patients and the community will be best served."

Plaintiff asserts that the phrase "a member whose privileges may be changed" demonstrates that the notice and hearing process applies to a future rather than a past change in status. Even if this were true, it could be reasonably applied only to the type of administrative action contemplated in subsections 3 and 4. Those sections contemplate a change in status on the basis of a complaint about a physician's conduct. Subsection 3 begins, "When a complaint is made involving a Member [of the medical staff] ..."

The reason for heightened procedural protection in cases involving complaints against physicians is obvious. The procedural process affords a necessary opportunity for fact-finding, maintaining the status quo pending the determination of the complaint and appropriate discipline, if any.

In Dr. Brooks' case, there is no such imperative. The fact of Dr. Brooks' non-compliance with the delineation of privileges requirement was never disputed. Nor do the bylaws otherwise limit the hospital's authority to impose such a requirement. We conclude that even if the bylaws may be read to provide for a pre-termination hearing in the case of a complaint, that right does not extend to "all other cases" covered by Subsection 1. This conclusion is supported both by the language of Subsection 1 and the purpose of such a pre-termination hearing requirement where a third party complains about a physician's conduct.

Dr. Brooks also argues that a pre-termination hearing requirement can be inferred from Subsection 6, which provides as follows:

"A.     Where it appears that there is imminent danger of possible substantial harm as to a patient's care at the hospital, the Executive Committee of the Medical Staff, after consultation with the Chief of the Department involved, or his representative, may temporarily suspend a member's privileges at any time pending due process, as outlined in Subsection 3 above.

B.     Any member of the Medical Staff who loses licensure shall be automatically and immediately suspended from the Medical Staff. In the event of restoration of licensure he may reapply for membership according to Article III, Section 2 of these Bylaws."

Dr. Brooks asserts that Subsection 6.A. provides the sole ground for suspension of privileges prior to a hearing. Brooks contends that this is an implied limitation on the hospital's power to terminate privileges prior to a hearing without finding an "imminent danger of possible substantial harm as to a patient's care."

This view of Subsection 6.A. ignores a critical aspect of the text. Subsection 6.A. allows suspension *at any time by the Executive Committee* of the Medical Staff.

This subsection cannot therefore be read to limit the power of the Medical Staff to recommend nonrenewal of appointment, or the Board of Trustees to deny reappointment and attendant privileges.

Brooks' further contention that he received inadequate notice that his appointment might not be renewed is manifestly without merit. The bylaws do not provide that a physician who refuses to complete a required administrative form be given additional notice of noncompliance. Brooks received at least two written communications stating that his failure to complete the delineation of privileges form could jeopardize his reappointment. Even if a pre-suspension notice requirement could be implied, Dr. Brooks received ample notice of impending adverse action.

We therefore hold that the hospital did not deviate from its bylaws prior to March 9, 1983.

The events subsequent to the March 9, 1983, order likewise do not demonstrate any failure to follow the bylaws. The district court held that no breach arose from the July 7, 1983, meeting because, contrary to Brooks' assertions, the staff hearing committee members did not consider or base their decision on any matter other than Brooks' failure to complete the required form. Joint Appendix at 606. We affirm that holding.

We also agree with the district court that the Board's decision, to treat as untimely Dr. Brooks' request to appeal the joint conference committee's decision, was in compliance with the bylaws. The Board's decision was based on the only reasonable interpretation of the bylaws. Plaintiff urges us to construe the bylaws strictly and hold that the fifteen-day period for appeal commenced on the date of decision. As counsel for the hospital points out, this construction would allow the hospital unilaterally to deprive a would-be appellant of the right to appeal by a simple failure to communicate the fact of decision. The interpretation of the phrase "date of decision" as the date the appealing party is *notified* of the decision preserves the fifteen-day period as a meaningful opportunity for the would-be appellant to consider and request further review by the Board.

We therefore affirm the dismissal of Dr. Brooks' breach of contract claim.

### III

Plaintiffs' second cause of action is a claim that Dr. Brooks was denied "rightful due process" by the hospital's action.

■ This allegation states no claim under the United States Constitution because the hospital is not a state actor. *See Modaber v. Culpeper Memorial Hospital*, 674 F.2d 1023 (4th Cir.1982). Under the Virginia Supreme Court's decision in *Khoury v. Community Memorial Hospital*, 203 Va. 236, 123 S.E.2d 533 (1962), no general right to due process is conferred by the law of Virginia independent of the employment contract between a member of a hospital medical staff and the hospital. *Khoury*, 123 S.E.2d at 538–9.

Virginia physicians are entitled to a written statement of the reason for suspension or termination of privileges. Virginia Code § 32.1–134.1; *Medical Center Hospitals, et al. v. Julia K. Terzis*, — Va. —, —, 367 S.E.2d 728, 730 (1988). Under § 32.1–134.1, a doctor may seek judicial review of a hospital's decision to suspend or terminate privileges if the reason stated is not one of those enumerated in the statute. *Terzis*, 367 S.E.2d at 730. Dr. Brooks has not asserted a claim that Arlington Hospital violated § 32.1–134.1, and we see no evidence of a violation on this record.

■ Dr. Brooks has no right to due process independent of Code § 32.1–134.1 and the procedures detailed in the hospital's bylaws. However, even if there was some "common law" right to due process as plaintiff asserts, we agree with the district court that Dr. Brooks received all the process to which he might be entitled:

"... this plaintiff has received all the process he is due. He has been given a hearing ... He was entitled to have counsel and did have counsel present at at least some of those hearings. He had

an impartial hearing board. And he was given the right of appeal."

Joint Appendix at 607.

We decline to take plaintiffs' invitation to require a pre-termination hearing where there is no legal basis for such a right.

We accordingly affirm the dismissal of Court II, the due process claim.

### IV

■ Count III of the complaint is styled "Interference with Right to Conduct a Profession." On appeal, count III is presented as a claim for "intentional interference with prospective economic advantage." The count is based on Brooks' allegations that Arlington Hospital failed to provide information in some instances, and provided misleading and false information in other instances, to hospitals at which Brooks sought appointments subsequent to non-renewal of his privileges at Arlington Hospital.

The district court dismissed this claim for failure to state a claim on which relief could be granted.

On appeal, Brooks argues that the correspondence shows that the hospital interfered with his prospective jobs and raises a question of fact as to the required element of intent. The hospital asserts that the letters show that they contain truthful assertions which fall within the qualified privilege for good faith advice.

In *Allen Realty Corporation v. Holbert*, 227 Va. 441, 318 S.E.2d 592 (1984), the Virginia Supreme Court recognized the tort of intentional interference with a prospective contract:

> "We have not decided any cases based upon interference with a prospective contract, but courts in other jurisdictions have recognized such a cause of action.... The cause of action arises from an intentional, improper interference with another's contractual relations, and this interference must (1) induce or otherwise cause a third party not to enter into a prospective contract with the plain-

tiff, or (2) prevent the plaintiff from entering into a contract ..."

*Allen*, 318 S.E.2d at 597.

After Brooks was not reappointed at Arlington Hospital, he began applying for privileges at other hospitals. He authorized those hospitals to seek information from Arlington Hospital concerning his appointment there. Arlington hospital made factually responsive and accurate replies. These letters are entitled to be treated as the giving of requested advice. Such an act is a recognized affirmative defense to a claim of intentional interference with prospective economic advantage under Virginia law. *Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97, 103 (1985).

In one instance, the hospital made no reply. However, the failure to reply cannot be made the basis of a claim, because the tort at issue requires a showing of intent. *Allen*, 318 S.E.2d at 597. There was no evidence presented to raise a question of fact whether the failure to respond was intentional rather than negligent.

We therefore affirm the dismissal of Count III.

### V

Count IV of plaintiffs' complaint purports to state a claim that hospital employees induced Dr. Brooks to violate several state and federal laws prior to non-renewal of his appointment in 1980. The district court dismissed this claim as timebarred. Plaintiffs do not challenge that ruling on appeal and we therefore treat count IV as abandoned on appeal.

The dismissal of all of plaintiffs' claims is *AFFIRMED*.